IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOSEPHAT MUA, ET AL.** | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil No. **PJM 14-3810** |
| | * | |
| **CALIFORNIA CASUALTY** | * | |
| **INDEMNITY EXCHANGE** | * | |
| | * | |
| Defendants | * | |
| | * | |

## MEMORANDUM OPINION

By Amended Complaint, Josephat Mua and Francoise Vandenplas ("Plaintiffs"), proceeding *pro se*, have sued California Casualty Indemnity Exchange ("CCIE") and Marsden & Seledee, LLC for their alleged acts relating to a dispute over an automobile insurance policy offered by CCIE under which Plaintiffs were covered.  For the following reasons, the Court **GRANTS WITH PREJUDICE** Marsden & Seledee's Motion to Dismiss the Amended Complaint, **GRANTS WITH PREJUDICE** CCIE's Motion for Judgment on the Pleadings as to all claims arising out of CCIE's non-renewal of Plaintiffs' automobile insurance policy and all claims with respect to the amounts recovered by CCIE in the Montgomery County, Maryland District Court related to property damage to the vehicle, and **DISMISSES WITHOUT PREJUDICE** the Amended Complaint as to all claims against CCIE for benefits payable under the policy except for property damage to the vehicle.

**A.**

According to the Amended Complaint, on August 26, 2011, Plaintiff Vandenplas was involved in an automobile accident in which her car (apparently owned by both Vandenplas and

Plaintiff Mua), stopped at a red light and was rear-ended by a vehicle driven by a driver insured by Allstate Insurance Company, causing damage to Plaintiffs' car. Plaintiffs were insured at the time by Defendant CCIE. Plaintiffs presented a claim for damage to CCIE after the accident. Among other things, Plaintiffs claimed that CCIE failed to adequately assist them after the accident—specifically by failing to reimburse them for the cost of a rental car, a benefit to which they allege they were entitled under the policy. Plaintiffs allege that the cost of the rental car "totaled more than $1,000." ECF No. 4 ¶¶ 17, 23.

After some back and forth, CCIE issued the Plaintiffs a check for some $5,000.[1] At more or less the same time, Plaintiffs were also negotiating with Allstate, the carrier of the driver who hit their car, concerning their claim for damages to their car. Although the Amended Complaint does not explicitly concede that Plaintiffs received a settlement from Allstate Insurance, it does state that "Plaintiffs did in fact incur expenses which were not covered by Allstate insurance." ECF No. 4, at 4. It emerges from the pleadings that Plaintiffs in fact did receive at least $5,000 from Allstate. Sometime in 2014, CCIE contacted Plaintiffs and demanded that they return the $5,000 check from CCIE, presumably pursuant to a provision in the CCIE policy granting CCIE a lien on any recovery from third parties for claims paid by CCIE.

Apart from this, the Amended Complaint alleges that CCIE cancelled Plaintiffs' insurance policy without notice. As a result, Plaintiffs allege they were required to obtain new, more expensive insurance. During a conversation between Mua and a CCIE agent, again at an unspecified time, the CCIE agent purportedly "[asked] Plaintiff Josephat Mua about his background." *Id.* at 14. Mua, whose national origin is Kenyan, apparently told the agent that.

---

[1] Although the Amended Complaint indicates that the check was in the amount of $5,000, CCIE maintains that it was in fact $5,128.83. The difference is not material to the Court's analysis.

According to the Amended Complaint, Marsden & Seledee is a Baltimore law firm that collects debts. It alleges that Marsden & Seledee "is liable to Plaintiffs both as a direct mailer of respondeat superior [sic] for the aforesaid negligence of [CCIE] and/or such other and/or different of its agents as discovery shall disclose." ECF No. 4, at 20. The Amended Complaint makes no other factual allegations regarding Marsden & Seledee.

In December of 2014, Plaintiffs filed a Complaint in this Court, which they amended in January 2015. The Amended Complaint proceeds in seven counts, alleging I) Breach of Contract; II) Breach of Duty; III) Negligence; IV) Discrimination and Unfair Termination Provision; V) Improper Termination Practice; VI) Unjust Enrichment; and VII) Violation of the Fair Debt Collection Practices Act.

CCIE has answered and filed a Motion to Dismiss, or in the Alternative for Summary Judgment, ECF Nos. 8, 16. Marsden & Seledee has filed a Motion to Dismiss, ECF No. 11.

**B.**

The Court first considers Marsden & Seledee's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

While federal courts must liberally construe a pro se litigant's claims, this requirement "does not transform the court into an advocate." *United States v. Wilson*, 699 F.3d 789, 797 (4th

Cir. 2012). The Fourth Circuit has noted that "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them.' " *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir.1990) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)).

The Amended Complaint is far from clear about which of the various causes of action Plaintiffs are bringing against Marsden & Seledee, as opposed to CCIE. However, given that Counts I through VI refer only to "defendant" in the singular, and exclusively discuss the alleged acts or omissions of CCIE, the Court construes Counts I through VI as being brought against CCIE only. To the extent that Plaintiffs seek to assert liability against Marsden & Seledee for CCIE's alleged acts under a theory of respondeat superior, the Amended Complaint pleads no facts whatsoever demonstrating the sort of relationship between Marsden & Seledee and CCIE that could make Marsden & Seledee liable for the acts of CCIE. As will be discussed further, the Court takes judicial notice of the fact that Marsden & Seledee represented CCIE in a state court action between Plaintiffs and CCIE.[2] Even so, it is not plausible and there is no conceivable legal theory that, by virtue of providing legal representation, a lawyer or law firm may be sued for such acts as are alleged here.

Count VII asserts that Marsden & Seledee violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1601 *et. seq.* by "negligently fail[ing] to communicate and interfer[ing] with the legal system." ECF No. 4, at 20. Plaintiffs attempt to fill in the yawning factual gaps in their Amended Complaint by way of an unauthorized surreply, to which they attach a June 20, 2014

---

[2] A court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment. *See Papasan v. Allain*, 478 U.S. 265, 268 n. 1 (1986); Hall v. Virginia, 385 F.3d 421, 424 (4th Cir. 2004); *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 312 n.1 (D. Md.) *aff'd*, 584 F. App'x 135 (4th Cir. 2014) (taking judicial notice of state court docket entries).

letter from Marsden & Seledee, in which Marsden & Seledee attempts to collect an outstanding debt of $5,128.83 owing to CCIE. ECF No. 24-8. The Amended Complaint states that on July 24, 2014, a few days after the date of Marsden & Seledee's letter, Mua "wrote to the Defendants because the claim was never fully resolved." Plaintiffs appear to imply that this letter, perhaps combined with Mua's alleged written response, somehow demonstrates a violation of the FDCPA, in particular its provisions governing the validation of debts at 15 U.S.C. § 1692g.[3] But the Amended Complaint is utterly devoid of any alleged acts or omissions that plausibly suggest a violation of this provision of the FDCPA, or any other law.

The Court **GRANTS WITH PREJUDICE** Marsden & Seledee's Motion to Dismiss.

## C.

The Court turns to CCIE's Motion to Dismiss, or in the Alternative, for Summary Judgment. Given that CCIE has already filed an Answer in the case, however, the Motion is more appropriately deemed a Motion for Judgment on the Pleadings pursuant to Rule 12(c), or in the Alternative, for Summary Judgment, and the Court will treat it as such. *See Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002). In any event, when considering a Motion for Judgment on the Pleadings, the Court applies the same standard as a 12(b)(6) motion to dismiss. *See id.*

The Amended Complaint, as noted above, is far from a model of clarity, and many of the numbered counts consist of formulaic recitations of some of the elements of particular causes of action. As best the Court can determine, Plaintiffs allege that CCIE committed wrongdoing 1) by attempting to recover the $5,000 paid to Plaintiffs by Allstate after the accident and more

---

[3] Plaintiffs' brief states: "By the letter dated June 20, 2014 (See Exhibit 6) this date can also show that the collection agency did not, as required by law, and did not follow up a telephone contact with a written notice within the five days required by law." ECF No. 24-1, at 5. If Plaintiffs are implying that Marsden & Seledee's "initial communication" with Plaintiffs, as defined in the FDCPA, was by telephone, the Amended Complaint offers no factual allegations regarding the date, time, or content of any such telephone call.

generally by failing to pay them benefits due under their insurance policy for the accident (unspecified except for the cost of a rental vehicle); and 2) by cancelling their insurance policy without notice. As to the attempt to recover the $5,000 and the nonpayment of other benefits, Plaintiffs allege breach of contract, breach of duty, negligence, and unjust enrichment. As for CCIE's alleged cancellation of Plaintiffs' insurance policy without notice, Plaintiffs add what appear to be statutory claims for "discrimination and unlawful termination provisions" and "improper termination practice."

**D.**

The Court considers Plaintiffs' claims pertaining to CCIE's cancellation of their insurance policy. CCIE argues that all such claims are barred by Plaintiffs' failure to exhaust administrative remedies. However, the Court need not consider this argument, because the Amended Complaint fails to plead facts sufficient to state a claim plausible on their face.

The Amended Complaint's discussion of the alleged cancellation of Plaintiffs' insurance policy epitomizes the type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" found to be insufficient by the Supreme Court in *Iqbal*. The Amended Complaint repeatedly alleges "[t]hat, Defendant California Casualty Indemnity Exchange, abruptly canceled the Plaintiffs' insurance in the absence of any notice, whether that be written or oral." ECF No. 4 ¶ 47; *see also id.* at ¶¶ 26, 59, 65, 75, 91 (same). That fact, by itself, in no way states a cognizable cause of action. Yet the Amended Complaint contains no further factual allegations material to any alleged lack of notice—for example, when Plaintiffs actually learned that their policy was cancelled; what communications they attempted to initiate with CCIE after they learned that their policy was cancelled; whether they were ever

told of or ever learned the reason given for the cancellation;[4] the date when Plaintiffs' policy was effectively cancelled; or, the customary manner through which Plaintiffs received communications from CCIE regarding changes to their policy. Plaintiffs' allegation that their policy was cancelled without notice is just that—a bald conclusory statement unsupported by any other alleged facts in the Complaint. Further, Plaintiffs do not allege what contractual provision, if any, CCIE violated by allegedly failing to give notice. Nor do Plaintiffs adequately allege damages under Md. Code Ann., Ins. § 27-612(a)(1): while Plaintiffs allege that Mua was fined $800 by the police for driving without insurance, and that they were required to purchase more expensive replacement coverage, neither is a type of damages compensable under the statute.[5] Accordingly, the Court **GRANTS WITH PREJUDICE** CCIE's Motion for Judgment on the Pleadings as to all claims arising out of CCIE's non-renewal of Plaintiffs' automobile insurance policy.

Next, to the extent that the Amended Complaint can be read to state an FDCPA claim against CCIE for damages resulting from unlawful debt collection practices, the Court finds that the Amended Complaint makes clear that CCIE was seeking to collect a debt as a creditor, not as a debt collector. A direct creditor is not a "debt collector" under the FDCPA. *See Ausar-El v. Barclay Bank Delaware*, 2012 WL 3137151, at *2 (D. Md. July 31, 2012) (citing 15 U.S.C. § 1692a(6)(F)).

---

[4] CCIE, for example, asserts in its brief that its cancellation was based on a substantial number of traffic citations to Mua and that it advised Plaintiffs that it would continue to offer the policy to Vandenplas if she agreed to exclude Mua from the policy. *See* ECF No. 16-1, at 3 n.3.

[5] Under Md. Code Ann., Ins. § 27-612(a)(1), if the insurer fails to comply with the notice provisions contained in Md. Code Ann., Ins. § 27-613, the insurer is liable to for the coverage that would have become effective except for the failure to comply with the provision. Section 27-612(a)(1)(ii) contains an exception to such liability where the insured has obtained other substantially equivalent coverage, which, according to the Amended Complaint, is exactly what Plaintiffs did here.

Accordingly, the Court **GRANTS WITH PREJUDICE** CCIE's Motion for Judgment on the Pleadings as to Plaintiffs' FDCPA claims.

**E.**

Finally, the Court turns to Plaintiffs remaining claims relating to CCIE's alleged failure to pay them benefits allegedly due under the insurance policy for the accident.

CCIE argues that Plaintiffs' causes of are barred by *res judicata*. According to exhibits attached to its Motion,[6] CCIE brought suit against Plaintiffs in the District Court of Maryland for Montgomery County in July 2014 because Plaintiffs had apparently recovered twice—once from Allstate and a second time from CCIE—for the damage to Plaintiffs' car resulting from the accident. The District Court complaint recites the same underlying facts of this case; *i.e.*, that Plaintiffs were involved in an automobile accident on August 26, 2011 with a driver insured by Allstate, that Plaintiffs pursued a claim with CCIE, and that CCIE issued a check for $5,128.83 for property damage to Plaintiffs' automobile. However, the District Court complaint also alleges that in March 2012 Plaintiffs received a settlement for $8,813.66 from Allstate; accordingly, Plaintiffs pursued and received a claim for property damages from CCIE <u>after</u> having already been compensated for said damages by Allstate. CCIE sought a judgment of $5,128.83 from Plaintiffs on a theory of unjust enrichment. A trial was held on December 10, 2014; the District Court entered judgment for CCIE in the amount of $5,128.83.

The doctrine of *res judicata*—known in some courts as claim preclusion or direct estoppel—forbids the relitigation of a claim that was decided or could have been decided in a prior suit. *See Snider Int'l Corp. v. Town of Forest Heights*, 906 F. Supp. 2d 413, 426 (D. Md. 2012). Under 28 U.S.C. § 1738, federal courts must give "full faith and credit" to judgments of

---

[6] As previously noted, the Court may take judicial notice of docket entries, pleadings and papers in other cases without converting this motion into a motion for summary judgment.

state courts. Section 1738 does not allow federal courts to employ their own preclusion rules in determining the preclusive effect of state judgments. "Rather, it [. . . ] commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482 (1982). In Maryland the doctrine of *res judicata* includes three elements: (1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; (2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and, (3) that there has been a final judgment[7] on the merits. *See Snider*, 906 F. Supp. 2d at 427 (citing *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (2005)). "Maryland has adopted the transactional approach, which asks whether the claims in this litigation 'arise[] out of the same transaction or series of transactions as the claim resolved by the prior judgment.'" *See id.* at 427-28 (quoting *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir.2008). "'All matters which were litigated or *could have been litigated* in the earlier case are conclusive in the subsequent proceeding.'" *Id.* (quoting *Norville*, 887 A.2d at 1038) (emphasis added).

As CCIE acknowledges, and the transcript of the District Court proceedings makes clear, Plaintiffs did not, in fact, actually pursue any counterclaims in the District Court, because their counterclaims were dismissed by the District Court for lack of jurisdiction. ECF No. 22, at 2-3; ECF No. 21-13, at 7-9 (Judge Wolfe: "The question is, do we have authority, do we have jurisdiction to consider your counterclaim? The answer is no."). This was because Plaintiffs sought over $1.5 million in damages, whereas the County District Court only has jurisdiction for actions in contract or tort if the debt or damages claimed do not exceed $30,000. Md. Code Ann., Cts. & Jud. Proc. § 4-401(1). While Plaintiffs could have moved the District Court to stay the

---

[7] Maryland courts have held that pendency of an appeal does not affect the finality of a judgment for res judicata purposes. *See Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 525 (2004).

action in order to assert such counterclaims in the Montgomery County Circuit Court, Md. R. 3-331(f), but there is no indication that they did so, so the District Court proceeded to grant judgment in CCIE's favor. ECF No. 16-1, at 4-5.

Still, the fact that Plaintiffs did not raise counterclaims in the District Court does not mean that res judicata is irrelevant to these claims in this Court. Because counterclaims are permissive rather than compulsory under Maryland law, *see Rowland v. Harrison*, 320 Md. 223, 233 (1990), Maryland has adopted the approach of the Restatement (Second) of Judgments with respect to the preclusive effect of a litigant's failure to assert a counterclaim in a prior proceeding. Under this approach, the court considering res judicata asks whether "[t]he relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." If so, the failure to raise a counterclaim is preclusive. *See Snider*, 906 F. Supp. 2d at 428 (citing Restatement (Second) of Judgments § 22).

Here, to the extent that any of Plaintiffs' claims in the present case seek to recover the $5,128.83 awarded to CCIE in the Montgomery County District Court, such a claim would nullify the County District Court's judgment, and is barred by res judicata. Accordingly, the Court **DISMISSES WITH PREJUDICE** the Amended Complaint as to CCIE for any claim seeking to recover the $5,128.83 awarded to CCIE in the County District Court.

To the extent Plaintiffs are arguing that they were not only wrongfully deprived of $5,128.83 or more of property damage benefits, but were further harmed by the deprivation of certain other benefits purportedly owed under their insurance policy, the Court finds that the maximum possible amount in controversy for such claims (e.g. the cost of a rental vehicle) plainly fails to satisfy the minimum $75,000 amount in controversy requirement set forth in 28

U.S.C. § 1332,[8] and the Court therefore lacks subject matter jurisdiction over them. *See Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995) (holding that a federal court lacks jurisdiction when it "is plain from the complaint that an amount less than the jurisdictional amount is all that is at issue[,]" as when the "plaintiff has alleged only a small amount of damages or it is otherwise obvious that the jurisdictional amount under § 1332(a) cannot be satisfied."). Notwithstanding Plaintiffs' utterly fantastic and implausible request for "compensatory damages in the amount of $500,000," it is beyond a doubt that Plaintiffs' only remaining claim is a simple contract or tort claim to recover, at most, a few thousand dollars in rental car fees or the like. The Court lacks jurisdiction to hear such a claim.

Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** the Amended Complaint against CCIE with respect to any of Plaintiffs' claims arising out of CCIE's alleged failure to reimburse their rental car fees or such other incidentals.

A separate Order dismissing the entire case will **ISSUE**.

                                                              /s/

                                     **PETER J. MESSITTE**
                                **UNITED STATES DISTRICT JUDGE**

**August 17, 2015**

---

[8] The Court has dismissed Plaintiffs' FDCPA claims, so the only remaining basis for this Court's jurisdiction would be on diversity grounds. But, as indicated in the text, the jurisdictional amount is patently insufficient to establish such jurisdiction.